## EDWARDS v. JOHNSTON.

(No. 778; Decided November 1st, 1915; 152 Pac. 273.)

ACTIONS—DAMAGES—CORPORATIONS—STOCK SUBSCRIPTIONS—STOCK—
ANSWER—WHAT CONSTITUTES A PENALTY—LIQUIDATED DAMAGES—
NEGOTIABLE INSTRUMENTS—DEFENSES.

1. Where notes are given for that portion of the price of stock which under the terms of the subscription contract was to be devoted to promotion expenses and the pleadings in an action on the notes admit that the notes were turned over to the promoter for his commissions, defendant cannot assert that the promoter had no title.

2. Where the subscription contract for stock required the promoter to dispose of all the shares, and there was uncontradicted evidence that the entire amount of stock was subscribed for, and no evidence that the subscriptions were not made in good faith, the fact that defendant and other subscribers whose contracts were made in good faith re-

fused to consummate them will not excuse defendant from payment of notes given for part of the price.

3. Where defendant and others, after subscribing to the stock of a corporation, refused to carry out their contracts, they cannot complain of delay in the organization of the company.

4. Subscribers to the stock of a corporation to be organized cannot complain of the manner in which funds devoted to promotion expenses were apportioned, where no sums in addition to those to be allowed under the original agreement were devoted to that purpose.

5. In view of Comp. Stat. 1910, Section 4103, requiring a life insurance company to possess the full amount of its capital, at least 50 per cent of which shall be in cash, and for the remainder to have in its possession notes of its stockholders secured to the satisfaction of the insurance commissioner, a provision in contract for subscription to the stock of a life company to be organized, that in case of noncompliance the first payment of 25 per cent should be retained, is not invalid as a provision for a penalty; the damages not being ascertainable with exactness.

ERROR to the District Court, Laramie County; HON. DAVID H. CRAIG, Judge.

Action by Marion W. Edwards upon promissory notes given by Margaret G. Henne, who died pending trial, and for whom Albert D. Johnston, her administrator, was substituted. The notes were given upon a stock subscription contract and endorsed to plaintiff before maturity.

Other material facts are stated in the opinion.

*Wm. C. Kinkead*, for plaintiff in error.

The alleged breach of contract as to the sale of the stock, alleged as a defense, was controverted by defendant's own witnesses. The court erred in refusing to direct a verdict for plaintiff, as no defense to the notes was shown and there is no evidence to support a verdict for defendant. (Farmer v. Bank, 130 Ia. 469, 107 N. W. 170; City Nat. Bank v. Goodlop, 93 Mo. Ap. 123; Firt Nat. Bank v. Buttery (N. D.), 116 N. W. 341; Nat. Bank v. Kenney, 98 Tex. 293, 83 S. W. 368; Bank v. Loukonen, 127 Pac. 947. See also Sec.

3342, Comp. Stats. Wyo.; DeGroat v. Focht (Okla.), 131 Pac. 172.) There is a presumption of valuable consideration. (Sec. 3182, Comp. Stats. 1910; Hamilton v. Diefenderfer (Wyo.), 131 Pac. 37.) The endorsement of the notes by plaintiff impliedly warranted that they were genuine and valid instruments. (Sec. 3169, Comp. Stats. 1910.) The holder of a promissory note is *prima facie* holder in due course. (Sec. 3217, Comp. Stats. 1910; Stamper v. Gay, 3 Wyo. 322.) A holder in due course is defined by statute. (Sec. 3210, Comp. Stats. 1910.) The endorser of a note given in consideration of an executory contract is not bound to see to the execution of the contract by payee. (Teideman on Com. Paper, Vol. 1, p. 261, Sec. 300. See also Glascock v. Rand, 14 Mo. 550; Cagle v. Lane (Ark.), 5 S. W. 790; Iron Co. v. Brown, 63 Me. 139; Dissenting opinion in Williams v. Neeley, 134 Fed. 1; Flood v. Petry (Cal.), 132 Pac. 256.) Defective title is defined by statute. (Secs. 2313, Comp. Stats. 1910, and 3214.) There is no evidence of fraud or deception; plaintiff frequently promised to pay the notes. The burden of proof as to want of consideration is upon plaintiff. (Brokaw v. McElroy (Ia.), 143 N. W. 1087.) The defense of want of consideration not being supported by proof, it is immaterial whether plaintiff was a good faith holder or not. (Glass v. Bank (Ga.), 79 S. E. 366; Bank v. Fulton (Ia.), 137 N. W. 1019; Bank v. Tobin, 134 Pac. 395; Forbes v. Bank (Okla.), 95 Pac. 785; McPherrin v. Tittle (Okla.), 129 Pac. 721; Citizens Bank v. Landis (Okla.), 132 Pac. 1101.) Notice or knowledge of endorsee must be such that the acceptance thereof is actual fraud. (Bank v. Young, 7 Atl. 488, 490, 41 N. J. Eq. 531; Toledo, S. & M. Ry. Co. v. Peters, 143 N. W. 18-24.) A holder of negotiable paper is not required to prove himself a bona fide holder. (Jones on Corporate Bonds, Sec. 200 (3rd Ed.) See Walnut v. Wade, 103 U. S. 683, 26 L. Ed. 526; Ottawa v. National Bank, 105 U. S. 342, 26 L. Ed. 1127; Hovey v. Sebring, 24 Mich. 232, 9 Am. Rep. 122; Hogan v. Dreifus, 121 Mich. 453, 80 N. W. 254; National Bank v. Snow, 187 Mass. 159, 72 N. E.

959.) The court should have instructed the jury to return a verdict for plaintiff. (*In re* Baldwin's Estate (Cal.), 123 Pac. 276-276; Fitzpatrick v. Nations (Okla.), 120 Pac. 1020; Commissioners of Marion Co. v. Clark, 94 U. S. 278; Boswell v. Bank, 16 Wyo. 161.) The verdict is contrary to plaintiff's requested instructions numbered one, two, three and four. The subscription contract was executed voluntarily and willingly by plaintiff and in the absence of fraud is valid. (Westrom v. Putney, 75 Md. 113.)

*Clark & Clark,* for defendant in error.

Plaintiff is not the owner of the notes in suit; the contention that the subscription contract was between defendant and Grant was erroneous, since none other than the corporation could enter into a subscription contract. The notes were given to the company and delivered to its agent, Fayn, who delivered them to Grant, as an individual, and Grant turned them over to plaintiff, so that the notes were never in the possession of the company. Plaintiff had initmate knowledge of the entire transaction before he acquired the notes. There was no delivery to the company and plaintiff is not a bona fide holder in due course. The obligation was conditional and plaintiff was not in a position to enforce payment on account of his connection with the transaction. It is not shown that the contract was performed by Grant by securing good faith subscription contracts for the entire capital stock. This is required by Sections 612, 613, 614, 615, Comp. Stats. 1910. Grant defaulted on his own subscription. A block of the stock was subscribed after January 1st, 1912, for which notes were given and which was not a bona fide subscription. (Johnson v. Allis, 71 Conn. 207, 41 Atl. 816.) An organization without good faith subscriptions for the entire stock is invalid. (Holman v. State, 105 Ind. 569, 5 N. E. 702; Stone v. Monticello Const. Co. (Ky.), 117 S. W. 369; State Bank v. Cook, 125 Ia. 111, 100 N. W. 72; Johnson v. Schar, 9 S. D. 536, 7 N. W. 838; New York Co. v. DeWolfe, 31 N. Y. 273; Luetzlsie v. Roberts, 130 Wis. 97, 109 N. W. 947.) Flood v. Petry

(Cal.), 132 Pac. 256, is directly in point. Williams v. Neeley, 134 Fed. 1, supports the doctrine. The subscriptions and notes of defendant have been released by the company otherwise disposing of defendant's stock. (Johnson v. Allis, *supra;* Leigh v. Railroad, 104 Ga. 13, 30 S. E. 381.) The amount represented by the notes is a penalty and therefore not enforceable. (8 Cyc. 95.) The notes are illegal, being issued in violation of statute. (Sec. 4103, Comp. Stats. 1910; Crofoot v. Thatcher, 19 Utah, 212, 57 Pac. 171.) The subscription was not accompanied by the required cash payment and is illegal and void. (President &c. v. Henderson, 8 S. & R. 217; Fiser v. Railroad, 32 Miss. 359; Wood v. Railroad, 32 Ga. 273. See collation of cases in 31 L. R. A. 234, 16 L. A. N. S. 879, and 17 Ann. Cas. 55; Johnson v. Schar, *supra.*)

Beard, Justice.

This action was brought by the plaintiff in error against Margaret G. Henne (since deceased) on two promissory notes signed by her and made payable to her order and indorsed by her in blank. After she had filed her answer in the case she died, and the defendant in error was substituted· as defendant. On the trial in the district court the jury returned a verdict in favor of defendant. Judgment was entered on the verdict and plaintiff brings error.

The petition is in two counts in the usual form. The defenses pleaded in the answer, which is quite lengthy, are, that plaintiff is not the owner of the notes; want and failure of consideration; fraud and false representations in procuring the notes; and that plaintiff is not a bona fide holder for value.

The circumstances attending the transactions in which the notes in suit were given are that the Wyoming Life Insurance Company of Wyoming was being organized under the laws of Wyoming, with a capital stock of $300,000, divided into three thousand shares of the par value of $100 each. That for the purpose of providing said capital stock, a surplus fund and the expenses of securing the necessary

subscriptions to its capital stock in order that it might be authorized to commence business, it was agreed by and between the incorporators that said stock should be sold at $150 per share, and that the first 25 per cent collected on sales of stock should be set aside for promotion and organization expenses and the balance to constitute the capital of the company and a surplus fund. They then entered into a contract with Le Roy Grant, one of the incorporators, by which it was agreed, "From this fund (the 25 per cent set aside for promotion and organization expenses) the said Le Roy Grant is authorized to pay not to exceed thirty dollars ($30.00) per share as a commission to stock salesmen; one dollar ($1.00) per share to each of the other four named incorporators of said company for their services and assistance in organizing said company, when the same is fully organized, and after paying for office rent, clerk hire, printing, advertising, attorney's fees and recording fees, and other expenses of organization, he shall retain the balance of said promotion fund as and for his own compensation up to the time when the affairs of said company shall be turned over to the management of its duly elected board of directors." The contract further provided that Grant agreed to sell the entire issue of three thousand shares of said stock at $150 per share and to collect a cash initial payment of $37.50 on each share at time of sale, taking subscription contract for the remaining 75 per cent ($112.50) payable on call not later than December 31, 1911, and to use due diligence to perfect the organization of the company on or before that date. It was for the initial payment on stock subscriptions that the notes in suit were given. The two subscription contracts signed by Margaret G. Henne on the respective dates of the notes are identical in language except as to date and amount. The first one is as follows:

## "WYOMING LIFE INSURANCE COMPANY

### OF WYOMING

## "SUBSCRIPTIONS TO CAPITAL STOCK.

"WHEREAS, The above named company has been incorporated under the laws of Wyoming, with an authorized capital of Three Hundred Thousand ($300,000) Dollars, divided into three thousand (3,000) shares of a par value of One Hundred ($100) Dollars each, which capital must be fully paid up and preserved unimpaired; and,

"WHEREAS, It being necessary to create a surplus fund, and a fund to defray expenses of promotion and organization, the incorporators have directed the shares of said company to be sold at One Hundred and Fifty ($150) Dollars per share, and have authorized LeRoy Grant to promote and complete the organization of said company, on a basis of not to exceed twenty-five (25%) per cent, out of which he is to pay all expenses incident thereto, the remainder of all funds to be placed in the capital and surplus funds of said company; and,

"WHEREAS, By the acceptance of this subscription, said LeRoy Grant agrees to proceed with diligence to accomplish the organization of said insurance company with capital and surplus fully paid as aforesaid, on or before December 31, 1911.

"Now, therefore, in consideration of the premises, I hereby subscribe for twenty shares of the capital stock of said company and do hereby agree to pay said LeRoy Grant therefor the sum of Three Thousand Dollars ($3,000.00) as follows: The sum of Seven Hundred and Fifty Dollars ($750.00) I agree to pay and do pay concurrently with this subscription. The remaining sum of Twenty-two Hundred and Fifty Dollars ($2,250.00) I agree to pay in cash or current exchange to said LeRoy Grant, at any time not later than December 31, 1911, immediately upon receipt of notice from him, that the capital stock of said company has been fully subscribed in good faith in amounts and at

rates netting the company at least Three Hundred Thousand ($300,000) Dollars of capital and at least One Hundred Fifty Thousand ($150,000) ˙Dollars surplus, less twenty-five. (25%) per cent organization and promotion expenses.

"No conditions, representations or agreements other than printed herein shall be binding on LeRoy Grant or the Wyoming Life Insurance Company.

"This subscription or contract is signed by the purchaser with full knowledge of the plan of operation and organization in so far as it relates to the apportionment of the amount paid by him as the same applies to the capital, surplus and promotion expenses of said company, and it is expressly understood that if I fail to make the final payment as stipulated in this contract, I forfeit to LeRoy Grant the first payment of twenty-five (25%) per cent on each share.

"Witness my hand, this the 3 day of May, 1911.

"Margaret G. Henne,
Name of Subscriber.

"Witness:
"Whitely & Taylor.     Cheyenne, Wyo.
"Postoffice Address."

By the terms of the contract between Grant and the other incorporators we are of the opinion that the initial payment of 25 per cent on stock subscriptions belonged to Grant and not to the company; but be that as it may, it is alleged in the answer that the company paid over to Grant one hundred and twelve thousand five hundred dollars pursuant to said agreement, and avers on information that these notes were so turned over and delivered to him or were retained by him as part of his commissions under said agreement, which allegation that the notes were so turned over to him is expressly and specifically admitted by the reply. Therefore the contention of counsel for defendant in error, made in their brief, that it was not proven that Grant ever had title to the notes needs no further consideration. That question was settled by the pleadings.

As to the title of plaintiff in error, the uncontradicted testimony, in addition to his having the notes in his possession, is that he purchased them from Grant, paying for them in cash.

It is alleged in the answer that certain false representations were made by the solicitors of subscriptions to the stock of the company upon which defendant relied, and being deceived thereby was induced to execute and deliver said notes. But the record contains no evidence in support of those allegations.

We come now to the main question in the case. That is, was there a want of consideration for these notes? It is undisputed that these notes were given in payment of the initial payment on subscriptions for the capital stock of the insurance company then in process of organization. By the plain terms of the subscription contracts, signed by the defendant, she agreed that if good faith subscriptions to the full amount of said stock should be secured at any time not later than December 31, 1911, she would immediately on notice of that fact, and not later than said date, pay the balance of her subscriptions. It is contended that Grant failed to secure good faith subscriptions for the full amount of said stock on or before that date, and for that reason the notes are without consideration. The uncontradicted testimony of two witnesses is that the full amount of said stock had been subscribed for on or before November 6, 1911; and there is an entire lack of evidence to show that any of the subscriptions were not made in good faith or that there existed any agreement or understanding, either express or otherwise, that any subscriber should be relieved from the obligations of his subscription contract, or that any subscriber was known to any of the parties not to be financially able to perform his contract or was in fact unable to do so, except the fact that the defendant and others failed, neglected or refused to make final payment as they had agreed to do. When Grant had, within the time limited, procured good faith subscriptions to the full amount of the capital stock, the conditions on which said subscrip-

tions were to become subsisting and binding contracts were complied with, and neither the defendant nor other subscribers could abrogate such contract by violating it on her or their part by refusing to make final payment. That is, the defendant cannot be heard to say that because she did not make final payment according to the contract she was not a good faith subscriber, and, therefore, Grant did not secure the required amount of subscriptions. Nor had she, after she had declined to make final payment and thereby become a stockholder in the company, the right to complain of the delay in completing the organization of the company or of the subsequent conduct of the incorporators or of those who did pay and thereby become entitled to a voice in the conduct of the company's affairs. It is also contended that the contract between Grant and the incorporators was fraudulent because the other four incorporators were to receive for their services in assisting in the organization of the company a part of the 25 per cent set aside for expenses of securing subscriptions to its stock and completing the organization of the company. But we cannot see how that could in any manner affect the subscribers who were informed by the terms of their subscription contracts that that amount was to be devoted to that purpose and that 75 per cent only of the amount they were to pay should constitute the capital and surplus fund of the company.

It is also argued that the forfeiture of the advance payment in case the subscriber failed to pay the balance must be considered as a penalty, and not as liquidated damages. But we do not think so. The statute required the company to possess the full amount of its capital, at least 50 per cent, should be in cash, and for the remainder of its capital to have in its possession notes of its stockholders, secured to the satisfaction of the Insurance Commissioner, before it could be authorized to commence business. (Sec. 4103, Comp. Stats. 1910.) The damages sustained by defendant's refusal to pay could not be readily ascertained or with any degree of certainty. No one could tell what the

expense would be in securing others to take said stock or what amount of loss the stockholders who had paid in full would sustain by reason of the delay in completing the organization on account of her default. "Where the damages are uncertain, and not capable of being ascertained by any satisfactory and known rule, whether the uncertainty lies in the nature of the subject itself, or in the particular circumstances of the case," it will be inferred that the parties intended the sum as liquidated damages. (13 Cyc. 90.) And again, "Where from the nature of the case and the tenor of the agreement, it is apparent that the damages have already been the subject of actual and fair calculation, and adjustment between the parties," it will be so treated. (Id.) Here the contract is plain and explicit that if defendant failed or refused to pay the balance she should forfeit the amount represented by the notes; which in our judgment was not an unreasonable amount in the circumstances. We have discussed the case on the assumption that the plaintiff was not a bona fide holder of the notes for value before maturity, and that any defense that could have been made thereto while in the hands of the first holder could be made against him. Upon the record presented the defendant failed to establish any legal defense to the notes in suit, and having so failed the verdict was not sustained by sufficient evidence and the judgment rendered thereon was erroneous. The judgment of the district court is reversed and the cause remanded for a new trial or such further proceeding as may be proper, not inconsistent with this opinion.                    *Reversed.*

POTTER, C. J., and SCOTT, J., concur.